## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**JESSICA HOLLY**                                                                    **PLAINTIFF**

**VS.**                                           **CIVIL ACTION NO.** _3:22-cv-265-CWR-LGI_

**VICKSBURG WARREN SCHOOL DISTRICT;**
**BRYAN PRATT; ALONZO STEVENS; JAMES**
**STIRGUS, JR.; KIMBLE SLATON; AND, NANCY**
**BULLARD**                                                                       **DEFENDANTS**

---

### COMPLAINT

---

COMES NOW the Plaintiff through counsel and files this her Complaint and, in support thereof would show unto the Court as follows, to-wit:

I.                                    <u>The Parties</u>

1.      Plaintiff, Ms. Jessica Holly,  is an adult resident citizen of Vicksburg, Warren County, Mississippi within the Southern District of the State of Mississippi.

2.      The defendant, the Vicksburg Warren School District, is being asked to waive service of a summons. If it chooses not to waive, it is a "state-created governmental organization that is subject to suit" and may be served a copy of the summons and complaint in accordance with Fed. R. Civ. P. 4(j)(2)(A) by serving a copy of each on its Chief Executive Officer, the Superintendent of the District.

3.      The defendants, Bryan Pratt, Alonzo Stevens, James Stirgus, Jr., Kimble

Slaton, and Nancy Bullard, are persons all believed to be residents domiciled within the Southern District of the State of Mississippi.  They are each being asked to waive service of summons.  If they choose not to waive, they will be served with process and a copy of the complaint by one of the methods of service authorized by Fed. R. Civ. P. 4(e).  These defendants are being sued in their individual capacities.

II.                                    Jurisdiction And Venue

4.      This case is brought under *42 U.S.C. §1983.*  This Court has general federal question jurisdiction under *28 U.S.C. §1331.*  The court has supplemental jurisdiction under 28 U.S.C. §1367 to hear the state law claims alleged.  The defendant school district is physically located within the Northern Division of the Southern District of Mississippi.  Venue is therefore proper in this Court pursuant to *28 U.S.C. §1391(b)(1).*

III.                                    The Facts

5.      Prior to December 15, 2020, Jessica Holly  worked in the Vicksburg-Warren School District for approximately twenty years with no disciplinary actions.  By a December 15, 2020, notice letter of termination, Ms. Holly was terminated from her job as Assistant Principal at the Vicksburg Intermediate School.

6.      The District fired Jessica Holly by letter dated December 15, 2020.  The letter of termination makes clear the sole reason for her termination was taking medical leave for the single day of Monday, December 14, 2020.  To be clear, Jessica Holly took medical leave on the advice of her treating physician on Monday, December 14th. She was fired the next day, Tuesday, December 15th. The letter of termination, in pertinent part, stated:

> The Vicksburg Warren School District values its employees
> and hoped that you would have been able to return to work.
> *The decision to terminate your employment in no way reflects*

*upon your job performance*, and you...leave your District employment in good standing. In the future, if you are able to return to work we encourage you to re-apply for any position for which you are qualified. (emphasis added)

7.     She received the letter of termination on Thursday, December 17, 2020, at approximately 2:30pm. The District offered Ms. Holly no pre-deprivation due process. The Board met that same day at 5:30pm and voted to terminate her employment.

8.     On December 22, 2020, Ms. Holly took her hearing request letter for a *post- deprivation* due process hearing to the Superintendent's Office around 3:30pm. No one was in the office so she left her letter on the desk of Ms. Annie Reynolds, the Superintendent's secretary.

9.     The hearing request letter of December 22, 2020, in pertinent part, says: "I am requesting a full due process hearing on the termination of my employment from the Vicksburg Warren School District."

10.     From January 15, 2021, through February 8, 2021, the attorneys for the parties attempted, albeit unsuccessfully, to come to terms for a post-deprivation due process hearing. The district never moved from its position that Ms. Holly had already been afforded all the process due to her in the form of various contacts by school personnel telling her that her FMLA ("Family Medical Leave Act") leave was ending on December 11, 2020; but nevertheless, she could have some form of a post-deprivation hearing within "parameters" to be set by the district. Plaintiff contends these "parameters" were to be limited to a short time for Ms. Holly to make a statement to the board.

11.     Ms. Holly's position remained the same, viz. – she was entitled to a full *post-deprivation* due process hearing – meaning: (a) she, at a minimum, be advised of the

cause or causes for her termination *in sufficient detail to fairly enable her to show any error that might exist*; (b) that she be advised of the names and *the nature of the testimony of witnesses against her;* and, (c) *at a reasonable time* after such advice she be accorded a *meaningful opportunity* to be heard in her own defense including the calling of witnesses, cross-examining witnesses, making use of any relevant evidence, paper or otherwise, and, arguing her case to the board.

12.     Likewise, Holly's termination was subject to published rules and regulations and an established statutory procedure for the termination of a teacher's employment which added to the constitutional due process minimums. To the extent they were mandatory they too became a part of the Fourteenth Amendment minimums.

13.     On February 8, 2021, counsel for the district advised the best the District could do would be to allow Ms. Holly five or ten minutes to address the board at its then upcoming February 25, 2021, meeting. With no other *post-deprivation* due process protections being offered, Ms. Holly still maintained she was entitled to a full *post-deprivation* due process hearing affording her all the rights provided under the Fourteenth Amendment Due Process clause.

14.     The Fourteenth Amendment Due Process clause entitled Holly to a pre-deprivation hearing *before* she was terminated and a full post-deprivation due process hearing. She was offered neither.

15.     Because of her long tenure and unblemished employment record; the fact she, on the advice of her doctors, sought only five (5) additional days, a reasonable accommodation, to heal from major surgery before returning to work; and the

circumstances surrounding her termination, Jessica Holly should not have been discharged from her employment with the Defendant School District.

16.    Plaintiff Holly's daughter was born on September 24, 2020. During the Caesarian section, the doctor nicked Ms. Holly's bowel. This necessitated calling in an expert to do a complete bowel resection.

17.    Ms. Holly went back to her OB/GYN for her scheduled follow up appointment. At the time, she was having bowel problems. The doctor decided at that appointment, Ms. Holly, instead of returning to work on Monday, December 14, should also take the week of December 14 through December 18 off to make sure there was no bowel obstruction. The effect of taking this week off would mean, since the Christmas break began on December 21, 2020, that Ms. Holly would be returning to work at the end of the Christmas Break on January 4, 2021.

18.    The paperwork from her treating physician, which Ms. Holly turned in to the District, gave her an expected return to work date as January 4, 2021. Her current treatment was given as: monitor bowel function, constipation, and appetite loss.

19.    Billia Knight works in the HR Office and is over benefits and Family and Medical Act Leave ("FMLA") leave for the District.  Ms. Holly sent Ms. Knight an email on October 30, 2020, informing Ms. Knight that the additional five days leave would be necessary and explained to her why.  She also forwarded her a disability form filled out by her doctor (for her short-term disability insurance) explaining the need for the five additional days and a return to work on January 4, 2021. She then asked Ms. Knight to let her know if anything further was needed.

20.    The October 30, 2020, email from Ms. Holly to Ms. Knight reads:

"Good morning! My doctor has extended my leave until January 4th. Her original date of discharge for me was December 14th. I am still being seen by her and now GI Associates. I have included her latest form for my disability since it has the new discharge date. I think that extension would put me at 4 days past the 60.[1] ***Let me know if there is anything else I need to include***." (emphasis added)

21.    A little over five (5) weeks later, Ms. Knight replied by email of December 7, 2020, saying:

"Hi Ms. Holly, I hope all is well.  Please see the attached.   60 day notice letter.  I do have the email from you with an updated return to work date for January 4, 2021.  This will be five days after your 60 day mark, which is December 11, 2020. ***These days will have to be approved by your principal.*** Please let me know if this date remains the same.   Thanks." (emphasis added)

22.    Ms. Knight's December 7, 2020 request to contact her principal was made over a month after Ms. Holly had already contacted her principal. On November 4, 2020, Ms. Holly called her principal, Ms. Lakeshia Batty, to talk with her about the five day leave extension.  She updated Ms. Batty on the leave and the need for the extra week on account of the bowel injury issue to make sure the problem had been cured and she would return on January 4th.

23.    According to Ms. Holly, Ms. Batty responded, "Okay," and asked her whether she had talked with Billia Knight at Central Office to which Holly responded, "yes."  She told her she had already submitted the paperwork to Ms. Knight for the leave extension, including the form filled out by her doctor stating the need and reason for the additional five (5) days leave.  She told Ms. Batty she would be returning to work on January 4, 2021, at the end of the Christmas break.

---

[1] The "60 day mark" referring to the twelve (12) weeks unpaid leave allowed under the <u>Family and Medical Leave Act</u>, 29 USC §2601 *et seq.*

24.     When she told Ms. Batty she had submitted the needed paperwork to Billia Knight, Batty replied, "then we're good."  Ms. Holly says, based on Ms. Batty's statement "then we're good," she assumed everything was, in fact, "good." She had told her principal she needed the extra five (5) days leave; the principal had approved the extension subject to her getting the paperwork to Billia Knight at Central Office; Ms. Holly submitted the paperwork and doctor's statement for her short-term disability coverage to Ms. Knight; Finally, Knight had clearly implied the only thing needed for approval of the extension was the principal's approval.

25.     As this series of communications about extending Ms. Holly's leave for the additional five days demonstrates, regardless of what they may have intended, what the District conveyed to Ms. Holly, at least until December 7, 2020, was the additional five days leave would be approved so long as it was agreeable with both Principal Batty and Billia Knight in the H.R. office. After she had obtained the approval of both her Principal and Billia Knight, it was certainly reasonable for Ms. Holly to have assumed the additional five days leave had been approved.

26.     On December 7, 2020, Ms. Knight sent Ms. Holly an email telling her that her twelve weeks FMLA leave would expire on December 11, 2020. Ms. Knight went on to say in the email that Holly's request to extend her leave for five (5) additional days "will have to be approved by your principal."

27.     That same date Ms. Knight sent Ms. Holly a certified letter in which, among other things, she told Ms. Holly, "[Y]ou will no longer be protected under the FMLA as of December 12, 2020.  You will be expected to return to work with a release from your

medical provider. If you are unable to return to work, please contact me immediately to discuss your situation.  Please remember all leave, with the exception of FMLA, must be approved by your principal."

28.    On December 14, 2020, Dr. Little from Human Resources contacted Jessica Holly.  Dr. Little told Holly she had no information about Holly having previously contacted her building principal and immediate supervisor, Mrs. Batty, to get Batty's approval on the five (5) extra sick leave days and a return to work on January 4, after the Christmas break, instead of the original return date, December 14, 2020.

29.    Holly explained to Dr. Little she had talked with Mrs. Batty in November and Mrs. Batty had approved Holly taking the extra five (5) days.

30.    Dr. Little replied since she had no knowledge of the November contact between Ms. Holly and Mrs. Batty, Ms. Holly needed to contact Mrs. Batty as soon as possible and clear up the matter of Mrs. Batty's agreement to the five (5) extra days leave. As soon as she got off the phone with Dr. Little, Holly called Mrs. Batty, got no answer, and left a voice mail asking her to call Ms. Holly back.

31.    Ms. Holly waited ten (10) or fifteen (15) minutes and when she got no call back from Mrs. Batty, she called Dr. Cedric Magee, Associate Superintendent. Dr. Magee was the next person of authority above Mrs. Batty. Ms. Holly asked Dr. Magee whether he had heard anything about the apparent controversy surrounding her request for five extra days sick leave. Ms. Holly explained to Dr. Magee what had happened. Dr. Magee replied he had heard nothing about it, but he would investigate the matter and get back with Ms. Holly. It is unknown whether Dr. Magee "investigated" or otherwise made inquiries into the matter as he said he would. On the morning of Thursday, December 17, not

having heard back from Dr. Magee, Ms. Holly emailed him. She explained to him she was worried sick over her job and asked if he had heard anything about her possible termination. He replied that he had not heard anything. Dr. Magee never reported anything back to Holly.

32.    Holly was ready, willing, and able to return to work on January 4, 2021, but, having been wrongly terminated, she was not given that opportunity.

IV.                    Cause of Action No. 1

Denial of Fourteenth Amendment Pre-Deprivation Procedural
Due Process Claim Prosecuted Under 42 U.S.C. §1983

33.    The facts and allegations contained in paragraphs 1 through 32 above are incorporated herein just as if set out fully herein in words and figures.

34.    Jessica Holly had a written contract to work for the Vicksburg Warren School District for the entire school year, 2020-2021. She was terminated mid-contract. Ms. Holly has been deprived of her federal constitutional right under the Fourteenth Amendment of the United States Constitution of pre-deprivation due process before her contract could have been lawfully terminated.

35.    The contract had been signed by the Superintendent and had been approved and ratified by the District's School Board, the final policymaker for the district. Therefore, Jessica Holly had a property interest in her contract of employment with the Vicksburg Warren School District which was property protected by the Due Process clause of the Fourteenth Amendment. Before she, as a public employee with a protected contractual property interest, could be terminated, she must have first been given a pre-deprivation due process hearing.  Jessica Holly was denied her pre-deprivation due

process.

36.     Pre-Deprivation Procedural Due Process requires notice of the charges against you and the right to answer the charges at a meaningful time, in a meaningful way. Jessica Holly was not provided any of this.

37.     The school district, under state law, may terminate certificated employees for "cause." Miss. Code Ann. §37-9-59 specifically provides: "For incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause the superintendent of schools may dismiss or suspend any licensed employee in any school District."

38.     In the case of Jessica Holly, an assistant principal who was to be terminated for cause and who opposed her termination, she had, at a minimum, the following Fourteenth Amendment Pre-Deprivation procedural Due Process rights:

> (a) to be advised of the cause or causes for her termination *in sufficient detail to fairly enable her to show any error that may exist*;
>
> (b) to be advised of the names and *the nature of the testimony of witnesses against her*; and,
>
> (c) *at a reasonable time* after such advice she be accorded a *meaningful opportunity* to be heard in her own defense.

39.     When published rules and regulations establish a particular statutory procedure for the termination of a teacher's employment, they may *add* to the constitutional minimum. If they do, such regulations must also be followed. Additional procedural rights were provided to Plaintiff Holly in Miss Code Ann. Rules §37-9-111, adopted by reference in the educator disciplinary statute, Miss. Code Ann. §37-9-59. These procedural rights, should have, but were not, satisfied by a termination with no due process and an

abbreviated post-termination process with "parameters" to be fixed.

40.    In her December 15, 2020, letter of termination, which Ms. Holly received on Thursday, December 17, 2020, at approximately 2:30pm, the only things which the Superintendent said were:

(A).    Ms. Holly's twelve (12) week unpaid FMLA leave expired on Friday, December 11, 2020;

(B).    Payroll records showed Ms. Holly had entered the status of leave without pay;

(C).    As of December 15, 2020, Ms. Holly had not reported back to work;

(D).    The Superintendent was going to recommend to the Board at its Thursday, December 17, 2020,[2] meeting (which started at 5:30pm, three hours after Ms. Holly received the letter of termination) that it "terminate" Jessica Holly's employment with the District effective Tuesday, December 15, 2020;

(E).    The decision to terminate "in no way reflects upon your job performance" and she left her employment with the District "in good standing;" and,

(F).    In the future, if able to return to work, Ms. Holly was "encouraged" to reapply for employment with the District.

41.    On December 17, 2020, Ms. Holly received the Superintendent's termination letter at 2:30pm in the afternoon advising he was going to recommend her termination to the Board. The meeting at which he recommended her termination was three hours later at 5:30pm. She had a right to have been afforded a reasonable amount of time

_____

[2] The Superintendent's letter actually says the Board meeting was going to be held on Thursday, December 19, 2020.  That is believed to have been an error on the Superintendent's part.  Thursday was December 17, not December 19.  There is no meeting notice, meeting Agenda nor any minutes on the District's website for a Board meeting held on Saturday, December 19, 2020.

within which to prepare her defense on both the issue of whether the leave issue was grounds for disciplinary action and, if so, what ought the penalty have been. The short space of three hours clearly did not afford Ms. Holly this right.

42.    Ms. Holly had the pre-deprivation Due Process right to be advised of the cause or causes for her termination in sufficient detail to fairly enable her to show any error that may exist.  She was not afforded this specificity.

43.    Ms. Holly had the pre-deprivation Due Process right to be advised of the names and the nature of the testimony of witnesses against her. She was not afforded this right.

44.    Ms. Holly had the pre-deprivation Due Process right to support her position by argument.  She was not afforded this right.

45.    Ms. Holly had the pre-deprivation Due Process right to support her position by presenting proof.  She was not afforded this right.

46.    Putting together the Board Policy and the statutes quoted above, it is clear Jessica Holly was entitled to pre-deprivation Due Process before her employment could be lawfully terminated.  While the determination of the process due is a federal question, the due process provided by the statutes and board policy are evidence leading to the conclusion Jessica Holly had a property interest in her contract of employment.

47.    In this case the Board is liable as a body because: (1) It clearly violated its own Policy, GBK titled Professional Personnel Suspension/Dismissal and the two statutes incorporated therein by reference, the Mississippi Educator's Disciplinary Statute, Miss. Code Ann. §37-9-59 and Miss. Code Ann. §37-9-111 for the Due Process procedures to be followed; (2) the Board members had knowledge of its own policy, GBK; and, (3) the

Board in terminating Jessica Holly without any due process was deliberately indifferent as to the known or obvious consequences of its vote to terminate Jessica Holly's employment contract.

48.     A person or entity acts under color of state law if he/she misuses power possessed by virtue of state law and made possible because the wrongdoer is clothed with the authority of state law. In this case, the School Board is the District's final policy maker in general under Mississippi Code Ann. §37-7-301 and Mississippi Code Ann. §37-7-301.1. It is the final policy maker specifically with reference to termination of certificated employees such as teachers and administrators under Mississippi Code Ann. §37-9-59. In this case, the School Board misused its power possessed by virtue of state law while clothed with the authority of state law when it decided to terminate Jessica Holly's employment contract without first having afforded her pre-deprivation Due Process. By virtue of their authority under state law, when the Board members voted to terminate Jessica Holly's contract, they were state actors.

Cause of Action No. 2

Denial of Fourteenth Amendment Post-Deprivation Procedural<br>Due Process Claim Prosecuted Under 42 U.S.C. §1983

49.     The facts and allegations contained in paragraphs 1 through 48 above are incorporated herein just as if set out fully herein in words and figures.

50.     Pre-Deprivation and Post-Deprivation Due Process work in Tandem. If the post-deprivation due process offered is strong (viz. – a full due process hearing with the right to cross-examine, call witnesses, introduce documents, etc.), then the need for pre-deprivation due process is mitigated.  Conversely, if the pre-deprivation due process

afforded is weak, then the post-deprivation due process must be strong (viz. – a timely and full due process hearing with the right to cross-examine, call witnesses, introduce documents, etc.).

51.     Regardless of the amount of post-deprivation due process afforded, it might mitigate but would never fully cure the District's failure to have provided the required minimum pre-deprivation due process. The less post-deprivation due process, the minimum level of pre-deprivation due process required would be heightened. In Ms. Holly's case, there was no due process afforded pre-deprivation. Therefore, to mitigate this total absence of pre-deprivation due process, the School District had a duty to provide Holly post-deprivation a complete due process hearing. Offering her 5 to 10 minutes to make a statement to the Board did not rise to the level required to provide Ms. Holly with the necessary post-deprivation due process. Instead, the District deprived her of her post-deprivation rights by offering a truncated opportunity to address the board for several minutes subject to unstated parameters. Such actions by the board were pretext to cover its desire to deprive Ms. Holly of her rights for no justifiable reason and get away with it.

Cause of Action No. 3

The Deprivation of Jessica Holly's Contract Was Done In Such<br>An Arbitrary and Capricious manner as to Be A Violation of Holly's<br><u>Substantive Due Process Rights Under the 14th Amendment</u>

52.     The facts and allegations contained in paragraphs 1 through 51 above are incorporated herein just as if set out fully herein in words and figures.

53.     On or about December 16, 2016, the Board adopted Policy GBK titled <u>Professional Personnel Suspension/Dismissal</u>. Policy GBK sets out the procedures to be

followed when an employee is terminated.  It in essence incorporates by reference the Mississippi educator's disciplinary statute, Miss. Code Ann. §37-9-59 and Miss. Code Ann. §37-9-111 for the procedures to be followed. The District did not follow these procedures.

54.     Policy GBK, Miss. Code Ann. §37-9-59 and Miss. Code Ann. §37-9-111, taken together provide the procedures to be followed in an employee discharge case at the Vicksburg Warren School District.  They provide for notice, hearing, the right to subpoena witnesses, the right to call witnesses, put on other proof, the right to appear before the Board making the decision, and generally the right to argue your case.

55.     In making its decision in Jessica Holly's case, the Board, its members, and the Superintendent all acted in reckless disregard of her rights to due process.

56.     They are believed to have relied upon the first section of Policy GBK which purports to allow treating an absence case as a "contract abandonment." This is classified as a breach of contract for which the Board may contend no pre-deprivation or post- deprivation hearing is required.

57.     In doing so, the Board flouts the fact that the amount of due process afforded to Ms. Holly is determined by federal law, not state law, and state law cannot be used to curtail the process which is due under federal law.  This was established over thirty-five (35) years ago in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

62.     In light of Loudermill and its voluminous progeny over the last thirty-five (35) years, it was arbitrary and capricious and reckless to disregard this established body of law and terminate Jessica Holly's contract without affording any pre-deprivation due process.

Defendants have therefore violated plaintiff's due process rights in reference to their termination of plaintiff.

Cause of Action No. 4

Violation of the Americans with Disabilities Act

59.     The facts and allegations contained in paragraphs 1 through 58 above are incorporated herein just as if set out fully herein in words and figures.

60.     To determine whether a condition is a disability within the meaning of the Americans with Disabilities Act, there is a three-step analysis: (1) You much prove the plaintiff has a physical impairment; (2) you must then prove the life activity constitutes a major life activity under the ADA; and (3) you much prove the impairment substantially limits the major life activity.[3]

61  When her employment contract was terminated and she was fired, Jessica Holly had a physical impairment that substantially limited her ability to work. *See* 45 C.F.R. §84.3(j)(ii) ("Major life activities means...working."). Her ability to work was a major life activity; and, her impairment substantially limited her major life's activity of being able to work. She was, according to her doctor's orders, to remain homebound for one additional week to monitor her bowel function, constipation, and appetite loss as a result of a serious ailment.

62.     Just having completed twelve weeks Family Medical Leave Act leave, Jessica Holly had a record of her being unable to come to work.  In light of the fact she was fired

---

[3] Bragdon v. Abbot, 524 U.S. 624, 631, 118 S. Ct. 2196 (1998).

for not coming to work, she was regarded by the school district as having a physical impairment, viz. – being unable to come to work.

63.     Under the Americans With Disabilities Act, 42 U.S.C. §12101 *et seq*. an employer such as the School District is required to make a "reasonable accommodation" to allow an employee such as Jessica Holly to return to work. A "reasonable accommodation" is, by its terms, most logically construed to mean that which presently, or in the immediate future, enables the employee to return to work and perform the essential functions of their job.

64.     Pursuant to her doctor's orders, Jessica Holly asked for one additional week of leave, a reasonable accommodation. It was "reasonable" because her physician also opined she would be able to return to work on January 4, 2021, when the school district re-opened for classes. Notably, her only restriction being no heavy lifting. It was a reasonable accommodation because it would have allowed Jessica Holly to return to work in the immediate future and perform the essential functions of her job. In fact, because heavy lifting was not a part of her job, she would have in effect been returning to her job with no restrictions.

65.     The ADA requires the employer and employee to engage in a "give and take" negotiation to arrive, if possible, at a "reasonable accommodation." Ms. Holly asked for the additional five days off per her doctor's orders.  There was no give and take on the side of the school district. Their response was to terminate her immediately after she missed the first of the five days requested, even though she was led to believe her leave had been granted.

66.     Plaintiff Holly has exhausted her EEOC remedies. She filed Charge Number

423-2021-00381 on March 3, 2021, against the Vicksburg Warren School District. A copy is attached as Exhibit (A) and incorporated herein by reference. In her charge, in pertinent part, she alleges "I believe that I have been discriminated against in violation of the Americans with Disabilities Act of 1990, as amended. I was discharged from employment even though I provided a projected return date of January 4, 2021. The Benefits Manager became aware of my request as early as October 30. 2021. The Building Principal became aware as early as November 4, 2020, about my request to take approximately an additional 5 days off work to tend to my medical condition."

67.     Plaintiff, Holly, received her "Right To Sue" letter by email on April 29, 2022. A copy is attached as Exhibit (B).

Cause of Action Number 5

Common Law Breach of Contract

68.     The facts and allegations contained in paragraphs 1 through 68 above are incorporated herein just as if set out fully herein in words and figures.

69.     Jessica Holly had a contract with the Vicksburg Warren School District for the entire 2020-2021 school year.

70.     The Vicksburg Warren School District violated that contract when, on December 15, 2020, it terminated the contract without affording her pre-deprivation due process and without making a reasonable accommodation in response to her request to extend her unpaid leave by one week.

71.     Termination of the contract was not the only violation. Every educator's contract has a provision in it which provides, "This contract shall be subject to all applicable policies, resolutions, rules and regulations of the employer, the Mississippi

Educator Code of Ethics and Standard of Conduct adopted by the state Board of Education and the laws of the State of Mississippi."[4] Thus, to the extent the defendants failed to provide plaintiff with the hearing rights afforded by Miss. Code Ann. §37-9-111, it also violated the contract between the parties. To the extent these rights were mandatory on the part of the district, they also become a part of the rights protected by the Due Process Clause of the Fourteenth Amendment.

Cause of Action Number 6

Breach of the Covenant of
<u>Good Faith and Fair Dealing</u>

72.     The facts and allegations contained in paragraphs 1 through 72 above are incorporated herein just as if set out fully herein in words and figures.

73.     Every contract in Mississippi includes, as a matter of common law, a covenant of good faith and fair dealing.

74.     The covenant of good faith and fair dealing protects the parties' justified expectations that the contract will be performed in a manner consistent with its agreed purpose.

75.     The agreed purpose of the contract between Holly and the School District was that the contract would be for the full school year and Holly would not be terminated in the circumstances of this case without the District affording her pre-deprivation due process and without the district granting her a reasonable accommodation of the five additional days leave as requested by her physician.

76.     The District violated the covenant of good faith and fair dealing when it terminated Holly's employment on December 15, 2020, without it first having afforded Holly

---

[4] Miss. Dept. Of Education Regulations, CMSR07-000-003, Chap. 24, Rule 24.1.

pre-deprivation due process and without the district granting her a reasonable accommodation of the five additional days leave as requested by her physician.

77.    Breach of the covenant of good faith and fair dealing falls under the purview of the <u>Mississippi Tort Claims Act</u>, Miss. Code Ann. §11-46-1 *et seq*. Notice of Claim was properly and timely served on the Vicksburg Warren School District, a political subdivision of the State within the meaning of Miss. Code Ann. §11-46-1(I).  Thereafter, suit was filed timely within the meaning of Miss. Code Ann. §11-46-11(3)(b).

78.    The relevant dates and deadlines are: December 15, 2020 (Date Jessica Holly terminated); November 29,2021 (date notice letter personally served on the school district's Superintendent); March 4, 2022 (date the 95 day tolling period ended); and, June 2, 2022, (deadline for filing suit). All timelines have been met and the MTCA ("Mississippi Tort Claims Act") claims are, pursuant to the Court's supplemental jurisdiction, properly before this Court.

V.                                          <u>Damages</u>

79.    Plaintiff has suffered a loss of her Fourteenth Amendment Constitutional right to *pre-deprivation* and *post-deprivation* due process hearings. As a direct and proximate result of the violation of her Fourteenth Amendment right to *pre-deprivation* and/or *post-deprivation* due process hearings, Plaintiff's depression worsened, she developed severe anxiety, her fibromyalgia returned after a seven year absence, and her blood pressure increased significantly. She has suffered emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. She has also lost back wages from December 15, 2020, through the end of the 2020-2021 school year.

80.    In this case, the School District fired a twenty- y e a r  employee with an unblemished work record, with no pre-deprivation due process, who was one day over her FMLA unpaid leave and did it in a manner totally inconsistent with U.S. Supreme Court authority. The District, through the School Board, its final policy maker, acted in an arbitrary and capricious and reckless manner in the way it chose to terminate her employment contract.

81.    Punitive damages may be recovered against individual defendants in an action brought under 42 USC §1983 where the defendants' conduct involves reckless or callous indifference to the Plaintiff's federally protected rights. Punitive damages are awarded under §1983 litigation in the jury's discretion to punish defendants for their reckless conduct and to deter defendants and others like them from similar conduct in the future. The individual defendants acted recklessly in totally ignoring Plaintiff's pre-deprivation due process rights and statutory rights which, under Miss. Code Ann. §37-9-111, included the following mandates: (1) The Board must set the hearing not sooner than five (5) days from the date of the hearing request; (2) The person making the recommendation to terminate cannot sit as the hearing officer; (3) After the hearing officer has been appointed, there can be no ex parte contact between the hearing and the parties; (4) The person being terminated may elect to have his/her hearing in executive session or open to the public; (5) The person has the right at the hearing to present matters relevant to the reason(s) given for the termination recommendation; (6) The person has the right to be represented by counsel at their own expense; (7) The person shall have a reasonable opportunity to present witnesses and other evidence "pertinent" to the issues; (8) The person shall have the right to cross-examine witnesses at he hearing; (9) The person shall have the right to

the issuance of subpoenas for witnesses to compel their attendance and giving of evidence; (10) The Board is required to provide a stenographer to record the proceedings in the case of an appeal; and, (12) If the hearing is conducted by a hearing officer, the Board must give the person an opportunity to appear before the Board makes its final decision before it makes its final decision to present a statement either in person or through his/her attorney.

VI.                                     <u>Prayer For Relief</u>

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that this her complaint would be received and filed and that after a trial thereon that she be awarded a judgment including:

1.      Money Damages sufficient to compensate her for the loss of her Fourteenth Amendment Due Process right to *pre-deprivation* and post-deprivation hearings and the damages flowing therefrom;

2.      Money Damages sufficient to compensate her for the loss of her right to a reasonable accommodation for her disability and the loss of the reasonable accommodation, itself.

3.      Money damages sufficient to compensate her for injury to her health as a direct and proximate result of the loss of her Fourteenth Amendment Due Process rights and the loss of her right to a reasonable accommodation under the <u>Americans with Disabilities Act</u>;

4.      Money damages sufficient to compensate Jessica Holly for her loss of income from December 15, 2020, through the end of the 2020-2021 school year;

5.      Reasonable attorney fees and expert witness fees pursuant to 42 U.S.C.

§1988,  as part of the costs;

6.      Plaintiff asks for punitive damages for all actions brought against the named defendants in their individual capacities under 42 U.S.C. §1983 with the damages to be apportioned.

7.      Plaintiff, Jessica Holly, is not asking that she be reinstated in her former job; she is instead seeking money damages for breach of contract; and,

8.      Such further and general relief as would be just in the circumstances.

<u>Demand For Trial By Jury</u>

Pursuant to Fed. R. Civ. P. 38, the Plaintiff demands trial by jury on all issues which may, by law, be tried before a jury.

Respectfully submitted,

/s/ Keith B. French
Keith B. French, MSB No. 104628
Keith B. French Law, PLLC
405 Briarwood Dr.
Suite 108Q
Jackson, MS 39206
Tel: (601) 376-9306
Fax: (832) 243-1927
Email: kfrench@peoplefirstfirm.com

ATTORNEY FOR PLAINTIFF