# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**JESSICA HOLLY**,

                *Plaintiff*,

v.

**VICKSBURG WARREN SCHOOL DISTRICT, et al.**,

                *Defendants*.

CAUSE NO. 3:22-CV-265-CWR-LGI

## ORDER

Before the Court is Jessica Holly's motion for summary judgment. Docket No. 18. After reviewing the arguments, evidence, and applicable law, the motion will be granted in part and denied in part.

**I.    Factual and Procedural History**

Jessica Holly started working for the Vicksburg Warren School District in 2000. She began as a high school English teacher and rose to Assistant Principal, earning her master's degree along the way. By 2020, Holly was the Assistant Principal at Vicksburg Intermediate School. She worked pursuant to a written employment contract.

In fall 2020, Holly sought time off to deliver and care for a new baby. She received permission to take a leave of absence under the Family and Medical Leave Act (FMLA). Because her FMLA leave was to end on Friday, December 11, 2020, her first day back to work would be Monday, December 14.

Holly's baby arrived via caesarian section on September 24. A doctor cut her bowel during the C-section, though, and a repair surgery called a "bowel resection" had to be conducted that day. As a result of the injury and surgery, Holly's doctor advised her to take another five days away from work to recover. On October 30, therefore, Holly gave the District a disability form in which her doctor explained the need for the additional time off. The information on the form will be discussed in more detail below.

On December 7, a District Human Resources employee advised Holly via email that because the additional days exceeded her FMLA leave, they required her Principal's approval.[1] Copied on that email were Human Resources Director Dr. Lennie Little and Principal Lakeisha Batty.

Holly was "not concerned" by the email, she says, because she had notified Principal Batty of her need for additional time on November 4. She claimed that Principal Batty had approved the extra days as long as Holly submitted the paperwork to the District. So Holly thought she had complied with everyone's requirements—the District's and the principal's—and would not have to work December 14 through 18.[2]

For her part, Principal Batty thought this "November 4" phone call might have occurred in December, a few days before Holly was supposed to return to work. But she confirmed that the call did happen. And when Holly sought the additional time off, Principal Batty testified, "my only response was okay."

This makes what happened next very puzzling.

---

[1] The December 7 email also instructed Holly to have her doctor fill out a "return to work form" and provide it to the District before Holly came back. Holly was terminated before she returned to work, so the presence or absence of this form is immaterial to this suit.

[2] Because December 18 was the last working day of the District's calendar year, Holly's first day back at work would have been January 4, 2021.

When Holly did not report to work on December 14, Principal Batty recommended firing her. In a deposition, Principal Batty explained her reasoning in this way:

> I needed someone that was going to be at work. I needed help. I had gone pretty much -- again, I started in July, [Holly] had already been out quite a few days there, so many days that I couldn't even give a fair assessment performance. And so we need -- I need someone that was going to be at work. And her not coming to work, that's going to put me in a situation where I'm still playing catch-up.

Later on December 14, Dr. Little called Holly about her absence. Holly replied that she had already sent in her paperwork and received permission from her Principal. Dr. Little replied, "well, I don't know anything about that" and directed Holly to call Principal Batty. Holly did so. When she did not hear back, Holly called the District's Associate Superintendent. He did not know about the situation but promised to look into the matter.

On the afternoon of Thursday, December 17, Holly received a letter from District Superintendent Chad Shealy. It was dated December 15. Because "you have not reported back to work," the letter said, he would recommend to the School Board "on Thursday, December 19" that she be terminated. (The date was a typo; the Board's meeting was in truth scheduled for later that same evening, December 17.) The Superintendent added that the District "hoped that you would have been able to return to work," affirmed that "[t]he decision to terminate your employment in no way reflects upon your job performance," and "encourage[d]" Holly to re-apply for employment. A few hours after Holly received this letter, the School Board terminated her.

"It was devastating to be fired with a newborn the week before Christmas," Holly would later testify. She "worked for the School District half of my life," but after her termination "didn't even want to go out in public because I would have people constantly

3

asking me what happened, what did you do." Holly became depressed, sought counseling, and received prescription medications to treat her depression and the fibromyalgia, once dormant, that returned as a result of the stress.

On December 22, Holly made a written request for "a full due process hearing" on her termination. On February 12, 2021, the School Board's attorney wrote Holly's attorney to offer a "post-termination hearing" before the Board on February 25. Holly understood from her counsel that the Board was offering only "five or ten minutes after the board meeting." Believing that to be less than a full hearing, she did not pursue it. No hearing was held.

In 2022, Holly filed this suit against the District and Board Members Bryan Pratt, Alonzo Stevens, James Stirgus, Jr., Kimble Slaton, and Sally Bullard, all in their individual capacities. She claimed that the defendants violated her Fourteenth Amendment right to procedural due process (both "pre-deprivation" and "post-deprivation" due process), her Fourteenth Amendment right to substantive due process, the Americans with Disabilities Act, her written contract, and the covenant of good faith and fair dealing. She sought compensatory and punitive damages.

The District counterclaimed against Holly. It alleged that she was actually a teacher during the 2020-2021 school year, had missed "approximately 74 out of the 97 work days" in the fall 2020 semester, and had been overpaid by $10,147.86. It sought to recoup that sum. The parties then commenced discovery.

Holly now seeks summary judgment against the District on her due process, ADA, and breach of contract claims. No other dispositive motions were filed. As a result, even if Holly's motion is granted in its entirety, a jury trial is necessary to determine the amount of

4

Holly's damages, adjudicate her claims against the individual defendants, and adjudicate the District's counterclaim.

## II.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III.    Discussion

Each of Holly's claims will be addressed in turn.[3]

---

[3] For the due process sections that follow, it is undisputed that Holly "had a property interest/right" in her employment. *Wilson v. Coll. of the Mainland*, 476 F. App'x 758, 761 (5th Cir. 2012) (quotation marks and citation omitted). As such, the Court will analyze only the disputed portions of those claims.

### A. Procedural Due Process

The District argues that Holly's procedural due process claim must be adjudicated by a jury. She has not yet proved a pre-deprivation due process violation, it says, because pre-deprivation due process requires only "oral or written notice of the reasons for the employment action, an explanation of the employer's evidence, and an opportunity to present the employee's side of the story." Docket No. 23 at 5 (quoting *McMullen v. Starkville Oktibbeha Consol. Sch. Dist.*, 200 F. Supp. 3d 649, 657 (N.D. Miss. 2016)).

The District has fairly stated the law. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). The "recognized principles of due process" are "adequate and timely notice and a meaningful opportunity to be heard." *Findeisen v. N. E. Indep. Sch. Dist.*, 749 F.2d 234, 237 (5th Cir. 1984). "Pre-termination proceedings do not need to be elaborate," but instead "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Parks v. Terrebonne Par. Consol. Gov't*, 759 F. App'x 220, 225 (5th Cir. 2019) (quotation marks and citation omitted).

In this case, the summary-judgment record shows that the District did not adhere to these principles.

Holly did as she was instructed every step of the way. She provided the District with disability paperwork from her doctor in October. She secured her Principal's approval in November or, perhaps, early December. Those were the only two things Holly needed to be away from work on December 14, 15, 16, 17, and 18. Yet the District terminated her for purportedly-unexcused absences on December 14 and 15.

The most significant deficiency in the District's response is its absence of evidence that it afforded Holly a meaningful opportunity to be heard before it fired her. If she was fired for unexcused absences on December 14 and 15, when exactly was she supposed to explain that her absences were, in fact, excused? Dr. Little's affidavit doesn't say that their December 14 phone call was the proper time and place; no, Dr. Little directed Holly to the Principal. But Principal Batty didn't return Holly's call. And the Associate Superintendent Holly reached that day knew nothing of the situation.

The District is left with Superintendent Shealy's December 15 letter. The Superintendent's letter did warn Holly that he would recommend her termination to the School Board. The letter, however, didn't invite Holly to attend and present her side of the story. *See Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018) (finding pre-deprivation due process violation when Mississippi school district did not provide its employee with "an opportunity to address the Board"). It wasn't sent with sufficient time to enable her to attend; she received it a few hours before the Board meeting started.[4] The letter was factually incorrect; it told her the wrong date of the Board meeting. And parts of the letter suggested that her attendance would be futile because the decision was a foregone conclusion. Instead of saying "this recommendation in no way reflects upon your job performance," for example, the Superintendent said, "[t]he decision to terminate your

---

[4] As the Fifth Circuit once wrote in another educator's due process case, "there was no necessity for hasty action; no emergency existed. . . . [T]his record does not even reflect a situation in which a student or teacher was threatening to disrupt the orderly educational processes. . . . What might be considered a pressing concern may be handled by the simple expedient of a leave of absence pending a reasonably scheduled hearing. There is not the semblance of impracticability of such a hearing reflected in the record before us, nor is any suggested." *Findeisen*, 749 F.2d at 239 (citation omitted). And, as the *Greene* court explained, this is not the "rare and extraordinary situation[]" where "a postdeprivation hearing [alone] will satisfy due process requirements." 890 F.3d at 243 n.2 (quotation marks and citations omitted).

7

employment in no way reflects upon your job performance." The decision had already been made.

On this record, there is no genuine issue of material fact for a jury to resolve. The District did not provide Holly with adequate pre-deprivation due process. Holly's motion is, therefore, granted as to this claim.

As to Holly's post-deprivation due process claim, there is a genuine factual dispute on whether Holly "chose not to pursue" her post-deprivation remedies. *Greene*, 890 F.3d at 243 n.6 (citation omitted). A jury must consider the claim. Summary judgment is therefore denied on this cause of action.

**B.     Substantive Due Process**

"Substantive due process bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (quotation marks and citation omitted). "To prove a substantive due process violation in this context, an employee must show that a public employer's decision so lacked a basis in fact that it could be said to have been made without professional judgment." *Jones v. La. Bd. of Sup'rs of Univ. of La. Sys.*, 809 F.3d 231, 240 (5th Cir. 2015) (quotation marks and citation omitted).

Here too, the Court denies Holly's motion for summary judgment. The facts as they stand suggest that the District's decision to terminate Holly was rendered without a moment's exercise of professional judgment. Put differently, the firing "was made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Mills v. Garcia*, 650 F. App'x 873, 878 (5th Cir. 2016) (quotation marks and citation omitted).

The Court nevertheless declines to grant her relief on this issue. It is not clear if Holly must also prove that the District's decision "shocks the conscience." *Lewis*, 665 F.3d at 631 (quotation marks and citation omitted). That is the plaintiff's evidentiary burden when a government *official* invokes qualified immunity as a defense to a substantive due process claim. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 839 (1998). And to be sure, the term has been used in official-capacity cases. *See Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 672 n.3 (5th Cir. 2007). But it is not plain whether that incorporation (or perhaps extension) was correct, as the cases those judgments rely upon mention "shocks the conscience" only after asking whether a "state *official* acted with culpability beyond mere negligence." *McClendon v. City of Columbia*, 305 F.3d 314, 325 (5th Cir. 2002) (emphasis added). And for that matter, some substantive due process cases completely fail to mention the "shocks the conscience" standard. *See Mills*, 650 F. App'x at 878; *see also Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987).

The Court therefore asks the parties to submit supplemental briefing addressing whether the "shocks the conscience" standard applies when a plaintiff seeks relief only against a government entity, rather than a government official who has invoked qualified immunity. A deadline will be set later. Holly's present motion is denied without prejudice.

C.   **Breach of Contract**

Holly argues that her written employment contract incorporated her procedural due process rights. In this way, her breach of contract theory appears to duplicate her procedural due process theory.

9

Without more fulsome briefing on the differences between these claims, if any, the Court grants Holly's motion for summary judgment on her contractual claim for the same reasons it provided in adjudicating her procedural due process claim.

### D.     Americans with Disabilities Act

Holly has brought two kinds of ADA claims: one for discriminatory termination and one for a failure to accommodate her disability.

#### 1.     Discriminatory Termination

"In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (quotation marks and citation omitted). Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* at 765 (quotation marks and citation omitted).

The evidence is straightforward. On October 30, Holly gave the District a "disability claim form" completed by her physician. The doctor listed the "disabling diagnoses," stated that Holly was "disabled" for "any occupation," listed her "functional limitations/restrictions," and provided an "anticipated length of disability." Armed with this knowledge, the District then instructed Holly on the step she would need to take to secure five additional days of leave; she had to obtain her Principal's permission. Holly had already followed that instruction. Her Principal admitted in sworn testimony that she approved Holly's request. When Holly took the leave, however, her Principal recommended

termination and the District fired her. The Principal later explained that she recommended termination based on Holly "not coming to work."

The District did not question Holly's evidence of disability or limitations at the time. It has submitted no evidence challenging that evidence now. It knew of her doctor's "disabling diagnoses" and professional determination that Holly was "disabled" for "any occupation." The District nevertheless argues that Holly has failed to establish each element of her prima facie case of discrimination. Docket No. 23 at 9-12.

In ADA cases sought to be established by "only circumstantial evidence," a plaintiff makes out a prima facie case by proving that "(1) she is disabled within the meaning of the ADA, (2) she was qualified for the job, and (3) she was fired on account of her disability." *Gosby v. Apache Indus. Servs.*, 30 F.4th 523, 525-26 (5th Cir. 2022) (citations omitted); *see Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021). This is supposed to be a "light burden." *Gosby*, 30 F.4th at 527.

The Court respectfully disagrees with the District's arguments and, for reasons to be explained below, also disagrees with the District's proffered legal framework. The analysis begins with the elements of Holly's prima facie case.

      **a.**      **Was Holly Disabled?**

"In an ADA case, the relevant time for assessing the existence of a disability is the time of the adverse employment action." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 618 (5th Cir. 2009) (citations omitted).

The record is uncontroverted that on the date of her termination, Holly had medical documentation of a disabling impairment. The doctor's finding that Holly was unable to work in "any occupation" was evidence that Holly was substantially limited in the major life

11

activity of working. *See* 42 U.S.C. § 12102(1). The District has not put forward evidence challenging that. It is enough to meet her burden on element one.

The District presses that Holly cannot have been disabled because her impairment was a temporary injury, rather than one of a continuing nature. Docket No. 23 at 10. It relies upon the Fifth Circuit's decision in *Evans v. City of Dallas*, 861 F.2d 846, 853 (5th Cir. 1988). This area of law has changed since 1988, however. *See Judge v. Landscape Forms, Inc.*, No. 1:12-CV-1117, 2014 WL 12502685, at *5 (W.D. Mich. Mar. 6, 2014) ("the Fourth Circuit concluded that the ADAAA 'abrogated' the earlier holdings that a temporary impairment cannot constitute a disability. *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 331 (4th Cir. 2014)"). The current text of the ADA makes the "transitory and minor" nature of an impairment relevant only when a plaintiff claims that they were "regarded as" having a disability. 42 U.S.C. § 12102(3)(B); *see also Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302-03 (5th Cir. 2020). It is not material to cases like Holly's, where the disability is established by the medical records.

The District then says that Holly is no longer disabled. Docket No. 23 at 10. That is also irrelevant, given the Fifth Circuit's instruction in *Chevron Phillips* to look for evidence of disability at the time of the adverse employment action.

Because the evidence shows that Holly was disabled at the time she was fired, element one of the prima facie case is satisfied.

### b. Was Holly Qualified?

Holly has also established the second part of her prima facie case. In response to Holly's record of 20 years of dutiful performance at the District, including in her capacity as Assistant Principal, the District has submitted no evidence disputing that she could "perform the essential functions of the employment position." *Chevron Phillips*, 570 F.3d at 615 n.7

(quoting 42 U.S.C. § 12111(8)). As in *Chevron Phillips*, the present record contains no evidence of unsatisfactory job reviews and no evidence "that [plaintiff] was discharged for performance-based reasons." *Id.*

### c. Was Holly Fired on Account of her Disability?

Lastly, element three, a causal connection, is satisfied. Principal Batty recommended Holly's termination on December 14, the very first day of Holly's disability leave. Holly was fired three days later. The temporal distance between Holly's disability leave and her termination is, therefore, between zero and three days. That temporal proximity is more than sufficient to establish a causal link at the prima facie stage. *See Lyons*, 964 F.3d at 305; *Gosby*, 30 F.4th at 527 ("The evidence was that [plaintiff] was terminated immediately after an event that highlighted her ADA-protected disability.").

This is a natural segue to the Court's more foundational concern. It is not clear why the District has relied upon the burden-shifting *McDonnell Douglas* framework. This is not a circumstantial case. Holly's brief seeking summary judgment expressly argued that she has "direct evidence of discrimination." Docket No. 19 at 14.

Recall that "direct evidence" is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Rodriguez*, 820 F.3d at 765 (quotation marks and citation omitted). The available evidence rises to that level. Principal Batty admitted in her deposition that she recommended Holly's termination because Holly wasn't "coming to work." The reason Holly hadn't come to work, though, was because she was on disability leave. No inference can be made other than this: Holly was fired because she took disability leave.

At the end of the analysis, the direct-versus-circumstantial debate is of no moment. Both paths lead to the same conclusion. There are no genuine issues of material fact that preclude summary judgment in Holly's favor on her ADA discriminatory termination claim. The jury will be instructed on liability and asked to assess damages on this claim.

### 2. Failure to Accommodate

The District's remaining arguments challenge Holly's "failure to accommodate" claim.

The ADA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A). In a failure-to-accommodate claim brought under this Act, "the plaintiff must show (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Thompson*, 2 F.4th at 467 (quotation marks and citation omitted).

> Special words, like reasonable accommodation, need not be uttered, but the employee must explain that the proposed adjustment in working conditions is for a medical condition-related reason. Once an accommodation is requested, an employer must engage in the interactive process, or a flexible dialogue, with the employee with the goal of finding an appropriate accommodation for the limitation. An employer that fails to engage in the interactive process in good faith violates the ADA. Where the breakdown is traceable to the employee, though, there is no violation.

*Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) (cleaned up).

Holly has presented evidence on all three elements of this claim. As discussed above, her record as an Assistant Principal in the District rendered her qualified, while her doctor's medical documentation rendered her disabled. There is no factual dispute on either of these

points. The District had actual knowledge of her diagnoses and "functional limitations/restrictions" on October 30. And there is no evidence that the District attempted to make, or in fact made, reasonable accommodations for her disabling condition.

The District makes three essentially factual arguments against liability on this claim. They are: (a) Holly "never asked for an accommodation," (b) "Holly never asked for time off," and (c) the District wasn't notified how more time off "would address whatever medical ailments Holly was still experiencing from her c-section delivery." Docket No. 23 at 12.

As for (a), though, Holly didn't need to utter magic words like, *I am requesting a reasonable accommodation under the Americans with Disabilities Act*. She satisfied the ADA by "explain[ing] that the proposed adjustment in working conditions is for a medical condition-related reason." *Delaval*, 824 F.3d at 481.

Regarding (b), the District's brief points to no evidence to support the proposition that Holly never asked for time off. The December 7 email from the District's Human Resources department reveals, in fact, that the District understood Holly's request as one for time off.

The District's third objection, (c), is its most complex. The Court devotes extra space and time to unpacking it.

The District has gone somewhat astray in diminishing Holly's condition as "whatever" ailments. Her doctor's disability paperwork was not vague. The District has also mischaracterized the record by blaming Holly's injuries on "her c-section delivery," as if it was a normal delivery. The additional days off were plainly for the bowel resection. But underneath the obfuscation is the kernel of an argument: how was the District supposed to know whether five days off would actually support Holly's recovery from a bowel resection?

15

But the ADA already answers that question. In these situations, "an employer must engage in the interactive process, or a flexible dialogue, with the employee with the goal of finding an appropriate accommodation for the limitation." *Delaval*, 824 F.3d at 481. In other words, *the District could have asked her*.

The District had plenty of time to inquire. It just never availed itself of the opportunity. Instead, it leapt to termination without any back-and-forth. And that "unwillingness to engage in a good faith interactive process is a violation of the ADA." *Thompson*, 2 F.4th at 469 (quotation marks and citation omitted).

The District's final substantive argument claims that Holly's case is "akin" to *Owens v. Governor's Office of Student Achievement*, 52 F.4th 1327 (11th Cir. 2022), a recent Rehabilitation Act decision.[5] There, the plaintiff claimed unspecified "complications" from her C-section, which included a blood transfusion; submitted a doctor's note stating that she "may" telework; and requested several months of telework. *Id.* at 1330. Her employer then asked her "to either submit additional documentation or return to the office." *Id.* She did neither of these and was terminated. *Id.*

In the ensuing litigation, her employer secured summary judgment on the plaintiff's Rehabilitation Act claim, and the Eleventh Circuit affirmed. *Id.* "The bottom line is that employees must give employers enough information to respond effectively to an accommodation request," the appellate court held. *Id.* at 1335. "Even so, we expect an employee's informational burden to be modest. . . . [A]n employee is not required to provide

---

[5] "The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA. Thus, jurisprudence interpreting either section is applicable to both." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (cleaned up).

her employer with detailed or private information about her disability to initiate the employer's duty to engage in an interactive assessment about the need for an accommodation." *Id.* at 1336.

Holly's case is distinguishable. Holly's doctor described the bowel resection, explained the resulting functional limitations, and found Holly unable to perform any occupation for the final five working days of the calendar year. "The link between the disability and the requested accommodation may often be obvious," the Eleventh Circuit wrote—and Holly's was such a case. *Id.* at 1335-36.[6] We know that with confidence because the District has not presented any evidence of ambiguity, confusion, or requests for clarification. It is not, therefore, akin to the employer in *Owens*. *See id.* at 1332 and 1337 (describing "no obvious limitation on functioning that arises from having had a c-section or a blood transfusion five or six weeks earlier" and explaining the employer's resulting request for "enough information . . . to evaluate Owens's accommodation request").

For these reasons, the Court grants Holly's motion for summary judgment on her ADA failure-to-accommodate claim. The jury will be instructed on liability and will determine an appropriate award of damages.

**IV.   Conclusion**

The motion for summary judgment is granted in part and denied in part.

**SO ORDERED**, this the 8th day of December, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[6] "Indeed, as the interpretive guidelines and courts have recognized, there may be some situations in which the reasonable accommodation is so obvious that a solution may be developed without either party consciously participating in an interactive process." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999) (collecting authorities).